**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL DENNIS WINTERS,<br><br>Defendant. | No. 12-CR-2018-LRR<br><br>**ORDER** |

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . *1*

*III. ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *A.   Alleged Facts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *B.   Applicability of Defense* . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *1.   Was there an unlawful and present, imminent
              and impending threat?* . . . . . . . . . . . . . . . . . . . . . *7*
        *2.   Did Defendant recklessly or negligently place
              himself in the situation?* . . . . . . . . . . . . . . . . . . . . *8*
        *3.   Was there a reasonable, legal alternative?* . . . . . . . . . . . . . *10*
        *4.   Was there a direct causal relationship?* . . . . . . . . . . . . . . . *11*
        *5.   Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

*IV. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

## *I.  INTRODUCTION*

The matter before the court is Defendant Michael Dennis Winters's "Motion for Pretrial Ruling Regarding Admissibility of Evidence" ("Motion") (docket no. 15).

## *II.  RELEVANT PROCEDURAL HISTORY*

On July 18, 2012, a grand jury returned a one-count Indictment (docket no. 2) against Defendant. The Indictment charges Defendant with knowingly possessing a

firearm after having previously been convicted of a crime punishable by a term of imprisonment exceeding one year and after having previously been convicted of a misdemeanor crime of domestic violence. Such offense is a violation of 18 U.S.C. §§ 922(g)(1), 922(g)(9) and 924(a)(2).

On August 29, 2012, Defendant filed the Motion. On September 10, 2012, the government filed a Resistance (docket no. 21). That same date, Defendant entered into a plea agreement with the government. *See* Plea Agreement (docket no. 30). Under the terms of the plea agreement, Defendant agreed to enter a plea of guilty conditioned on the court's denial of the Motion. If, however, the court grants the Motion, Defendant can withdraw his guilty plea and proceed to trial. On October 30, 2012, Defendant filed a Supplement (docket no. 50) to the Motion, which clarified that "Defendant is asking the [c]ourt to make a ruling on the availability of a self defense jury instruction," as well as "the admissibility of the evidence which he contends supports his theory of defense." Supplement at 1, 2. On November 7, 2012, the court held a hearing on the Motion. *See* Minute Entry (docket no. 53). Defendant appeared in court with his attorney, Jill M. Johnston. Assistant United States Attorney Dan Chatham represented the government. The matter is fully submitted and ready for decision.

### III. ANALYSIS

In the Motion, Defendant requests that the court permit him to introduce evidence supporting his justification defense. Defendant further requests that the court instruct the jury regarding justification. The court shall now turn to consider whether such evidence is admissible and whether, ultimately, a justification instruction is appropriate.

#### A. Alleged Facts

For purposes of addressing the instant Motion, the court shall assume without deciding that the facts are as alleged by Defendant.

Chimere Tillman, Myiesha Tillman and Meeiesha Tillman are sisters who, at all relevant times, resided at 207 Lafayette Street in Waterloo, Iowa. Their mother, D'Arci Phillips, and their brother, Darieo Tillman, also lived at 207 Lafayette Street. Defendant is a close family friend and visited the Tillman residence on a daily basis. The evidence presented at the hearing established that, at all relevant times, Chimere, Meeiesha and Defendant owned cell phones.

Sometime around April 2012, Chimere was romantically involved with Marlon Harris for approximately one month. Chimere ended the relationship because Harris allegedly lied and cheated. Immediately following the break-up, there were no problems between Chimere and Harris. Chimere considered the break-up to be "friendly." However, on April 16, 2012, while Chimere was at a birthday party, Harris sent Chimere insulting text messages. Chimere was surprised to get these text messages because she had not spoken to Harris since their relationship ended. Defendant was also at the birthday party and was aware of the text messages. Later that day, Harris called Meeiesha, Chimere's sister, and told Meeiesha that he was upset. Meeiesha was concerned that Harris was going to hurt someone given that Harris was "known for shooting." Harris also called Chimere later that evening and told her that he knew where she and her family "lay [their] heads at." Much like Meeiesha, Chimere was concerned because she believed Harris had a history of possessing and discharging a firearm.

Following the series of text messages and phone calls on April 16, 2012, several other incidents occurred involving the Tillmans and Harris. First, Chimere's car was vandalized outside the Tillman residence at 207 Lafayette Street. Defendant was at the Tillman residence at the time. Although Chimere did not see who vandalized her car, she saw a white Taurus drive away shortly before discovering her car had been vandalized. Chimere recognized the white Taurus as a car that Harris had been in before. After she

3

discovered her vandalized car, Chimere called the police; however, after investigating, the police did not charge Harris with the vandalism.

The next incident occurred some time around April 20, 2012, outside of Edo's Sports Bar ("Edo's") and involved Meeiesha and Harris. Meeiesha was leaving Edo's with Defendant and another individual when Harris approached her. According to Meeiesha, Harris was angry, which caused her to go into "defense mode" and strike him with her shoe. Defendant and the other individual pulled Meeiesha away and the three left the bar without further incident.

Another incident also occurred at Edo's around April 22, 2012, and involved Chimere, Defendant and Harris. Harris made an insulting comment to Defendant. Defendant "grabbed" Harris and told him to stay away from the Tillmans. Defendant left the bar after the altercation, but Chimere stayed. Later, when Chimere was ready to leave the bar, she called Defendant to come get her. After Defendant arrived back at the bar along with several other Tillman family members, Harris made an insulting remark to Chimere and she threw beer in Harris's face. A fight broke out between Chimere and another woman who was at the bar with Harris. An Edo's employee broke up the fight.

Finally, on April 27, 2012,[1] Chimere, Defendant and Marcus Floyd went to Edo's. Two Edo's employees saw Harris drive through the parking lot and informed Chimere, who also saw Harris in the parking lot. While Chimere remained inside and called the police to report Harris's harassment, Defendant walked outside the bar. Harris, who was a passenger in the car, rolled down the car window and made derogatory statements to Defendant. Harris also made a threatening hand gesture and said he was going to "get" Defendant. Harris then left the parking lot.

---

[1] It appears that this incident, which is the basis of the current charge against Defendant, began late in the evening of April 27, 2012, and continued into the morning of April 28, 2012.

4

The police responded to Chimere's call and told Chimere that, if she saw Harris's car again, to call the police and provide the license plate number. Defendant left shortly after the police arrived and went back to the Tillman residence. Chimere, however, remained at the bar. After approximately thirty minutes, Chimere called her mother, D'Arci, who was at the Tillman residence with Defendant. D'Arci, Meeiesha, Defendant and a few other individuals left the Tillman residence to go check on Chimere. After they found Chimere, D'Arci, Meeiesha, Defendant and the other individuals proceeded to drive back to the Tillman residence and Chimere left in her car with Floyd. On the way to drop off Floyd, Chimere stopped at a gas station where she saw Harris again. Harris made insulting remarks and Chimere saw something "shiny" in Harris's hand, which she believed was a firearm. Harris then drove away and Chimere proceeded to take Floyd home.

Meanwhile, Meeiesha, Defendant and the others were driving back to the Tillman residence at 207 Lafayette Street. Defendant told Meeiesha to drop him off before she reached the house and he continued the rest of the way on foot. When Defendant reached the residence, he became aware that Harris was in the area. Darieo, the Tillman sisters' brother, was also at the house. When Darieo asked what they should do about Harris, Defendant told Darieo that he wanted to "bang 'em out." Defendant's Exhibit B, Recording of April 28, 2012 Interview with Defendant, at 1:40. Darieo responded that Defendant should not do that because "they" have a pistol. *Id.* Defendant continued to look out the front window of the residence and saw Harris driving by repeatedly and stopping in front of the Tillman residence brandishing a firearm. Defendant knew that the Tillmans kept a firearm in the house, and he stated that he was going to go retrieve the firearm from upstairs. Before he did so, Defendant opened the door and walked out onto the porch. Defendant saw Harris outside, and Harris said, "What up, blood? What's good now?" *Id.* at 1:41. Defendant went back inside the house, ran upstairs and retrieved the

5

firearm. Defendant then went back downstairs and onto the front porch. Harris was still in the car outside the house. Defendant said, "Get on before you get on." *Id.* at 1:42. Harris then took his gun "out the window." *Id.* As soon as Harris did so, Defendant ducked inside the house and fired approximately four shots outside the front door. After Defendant fired the shots, Chimere, who had arrived back at the Tillman residence at some point, proceeded to collect the shells and flushed them down the toilet. Defendant wrapped the gun in a towel and set it on a bed in an upstairs bedroom.

Police responded to a 911 call from the driver of Harris's car. Police took Defendant into custody on April 28, 2012, and Investigator Andrea Frana interviewed Defendant. Although Defendant initially denied firing the shots, he eventually admitted that he had, in fact, fired multiple rounds. Defendant was subsequently charged in the instant action.

## B. *Applicability of Defense*

The Eighth Circuit Court of Appeals has "yet to recognize in a given case a justification defense to a violation of § 922(g)." *United States v. Parker*, 475 F. App'x 644, 645-46 (8th Cir. 2012) (citing *United States v. El-Alamin*, 574 F.3d 915, 925 (8th Cir. 2009)). However, the Eighth Circuit has noted that, if such a defense is available, the defendant must show:

> (1) he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) that he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to commit a criminal act;
>
> (3) that he had no reasonable, legal alternative to violating the law; and
>
> (4) that a direct causal relationship may be reasonably anticipated between the commission of the criminal act and the avoidance of the threatened harm.

*Id.* at 646 (quoting *El-Alamin*, 574 F.3d at 925). "[A] defendant is entitled to a jury instruction concerning an available justification defense if [he or] she shows an underlying evidentiary foundation as to each element of the defense, regardless of how weak, inconsistent or dubious the evidence on a given point may seem." *United States v. Hudson*, 414 F.3d 931, 933 (8th Cir. 2005) (quoting *United States v. Kabat*, 797 F.2d 580, 590-91 (8th Cir. 1986)) (internal quotation marks omitted). A district court, however, may exclude evidence supporting a justification defense if the defendant is unable to make a prima facie showing as to each element. *See United States v. Lomax*, 87 F.3d 959, 962 (8th Cir. 1996) (finding that the defendant could not establish the first and third elements and, thus, holding that "the district court did not err in refusing to allow [the defendant] to present evidence in support of a justification defense").

Those Courts of Appeals that have recognized a justification defense to § 922(g) have noted that the defense applies only in "rare situations," *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990), and "have construed the defense narrowly," *Lomax*, 87 F.3d at 961 (citing *United States v. Perrin*, 45 F.3d 869, 874-75 (4th Cir. 1995)). With these principles in mind, the court shall address each requirement.

### 1. *Was there an unlawful and present, imminent and impending threat?*

First, Defendant must show that he was "under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury." *Parker*, 475 F. App'x at 646 (quoting *El-Alamin*, 574 F.3d at 925). Defendant argues that, at the time he retrieved the firearm from the upstairs bedroom, he reasonably believed Harris was going to shoot him. The government, however, argues that Defendant was in constructive possession of the firearm before the alleged threat arose.

"'Possess[ion]' of a firearm, as contemplated in 18 U.S.C. § 922(g)(1), can be actual or constructive." *United States v. Stoltz*, 683 F.3d 934, 940 (8th Cir. 2012)

7

(alteration in original) (citing *United States v. Brown*, 634 F.3d 435, 439 (8th Cir. 2011)). "Actual possession refers to the 'knowing, direct, and physical control over a [firearm],' whereas constructive possession 'is established by proof that the defendant had control over the place where the firearm was located, or control, ownership, or dominion of the firearm itself.'" *Id.* (alteration in original) (quoting *Brown*, 634 F.3d at 439). Possession may be sole or joint. *United States v. Byas*, 581 F.3d 723, 726 (8th Cir. 2009).

In this case, the court agrees with the government that Defendant was in constructive possession of the firearm before the threat arose. The evidence establishes that Defendant was a frequent guest at the Tillman residence. At the hearing, Meeiesha testified that Defendant was at the residence four to five times a day and, on occasion, slept there. During his interview with Investigator Frana, Defendant admitted that he knew where the firearm was located within the house. Defendant also admitted that, upon arriving back at the Tillman residence on April 28, 2012, Defendant intended to retrieve the firearm from upstairs. The court finds that, based on these facts, Defendant was in constructive possession of the firearm before there was an "unlawful and present, imminent, and impending threat," *Parker*, 475 F. App'x at 646 (quoting *El-Alamin*, 574 F.3d at 925). Accordingly, the court finds that Defendant has failed to establish the first requirement for a justification defense.

### 2. *Did Defendant recklessly or negligently place himself in the situation?*

Even if Defendant were able to make the requisite showing as to the first requirement, he must still demonstrate that he did not "recklessly or negligently place[] himself in a situation in which it was probable that he would be forced to commit a criminal act." *Parker*, 475 F. App'x at 646 (quoting *El-Alamin*, 574 F.3d at 925). Defendant argues that he "did not entice . . . Harris to come to 207 Lafayette, nor did he egg . . . Harris on to do so. . . . Rather, Defendant . . . was lawfully inside of his friends' home, and only obtained a firearm after . . . Harris began driving by and pointing his gun

8

at the home and Defendant." Brief in Support of Motion (docket no. 15-1) at 6-7. The government contends that the facts of this case are indistinguishable from *United States v. Blankenship*, 67 F.3d 673 (8th Cir. 1995), and that Defendant provoked the altercation by exchanging words with Harris earlier in the evening and then exiting the house and confronting Harris shortly before the shooting.

In *Blankenship*, the government charged the defendant with being a felon in possession of a firearm after the defendant fatally shot an individual named John Kellick. *Id*. at 674-75. The evidenced established that:

> an intoxicated Kellick, accompanied by his son and two women, came to Blankeship's trailer home after midnight, seeking the return of some money and threatening harm to Blankenship and his family if he did not pay. Blankenship took the threats of harm seriously because he knew Kellick to have a reputation for violence when he was intoxicated and to have a reputation for carrying a knife or razor in his possession. Blankenship went out to talk to Kellick. When the confrontation escalated, Blankenship returned to his bedroom in the trailer, put on his pants, and exited through the back door when Kellick was not paying attention. Blankenship walked to his father's nearby trailer, retrieved a shotgun, and returned to the yard to protect his family. Neither Blankenship nor his father had a telephone. The two men became involved in a scuffle as Kellick refused to leave and grabbed for the shotgun. The shotgun inadvertently discharged in the scuffle and killed Kellick.

*Id*. at 678. The defendant argued that his actions were justified. *Id*. at 675. The Eighth Circuit, however, found that the defendant had "recklessly placed himself in the situation" by confronting Kellick and not remaining in the trailer. *Id*. at 678. Accordingly, the Eighth Circuit affirmed the district court's decision to exclude evidence in support of the defense. *Id*.

The court finds that *Blankenship* is directly on point. Defendant recklessly placed himself in a dangerous situation by walking out onto the porch to confront Harris.

9

Defendant could have remained inside the Tillman residence and, as discussed below in connection with the third requirement, called and waited for police assistance. Accordingly, the court finds that Defendant cannot establish the second element of a justification defense.

### 3. *Was there a reasonable, legal alternative?*

Even if Defendant could establish the first and second requirements, he must still establish "that he had no reasonable, legal alternative to violating the law." *Parker*, 475 F. App'x at 646 (quoting *El-Alamin*, 574 F.3d at 925). Defendant contends that, "given the facts of this case, calling the police was not a reasonable choice" because, "[i]f Defendant had not obtained a gun himself and instead hidden inside the residence while calling the police, it is likely . . . Harris would have ended up firing at Defendant and the residence." Brief in Support of Motion at 7. The government, however, argues that "[D]efendant was aware of the apparent threat from Harris at the Lafayette Street residence for a substantial period of time" but, rather than call the police, "chose to wait in the house, get a gun, provoke Harris from the porch, and then shoot at him." Brief in Support of Resistance (docket no. 21-1) at 8.

The court agrees with the government that, because Defendant had sufficient time and opportunity to contact the police, he could have reasonably avoided the need to possess and use the firearm. The court notes that Defendant has not alleged that he did not have access to his cell phone when he arrived back at 207 Lafayette Street on April 28, 2012, and saw Harris outside the residence. The court further notes that Chimere had called the police on two prior occasions—first when her car was vandalized and then earlier in the evening on April 27, 2012—and the police had responded each time. Defendant was with Chimere both times when she contacted police, and he was aware that police responded. Thus, Defendant had no basis for believing that police would not respond if he called to report Harris driving past the residence brandishing a firearm. *Cf. United States v.*

10

*Gomez*, 92 F.3d 770, 777 (9th Cir. 1996) (finding the defendant made a prima facie showing that there were no reasonable, legal alternatives to possessing the firearm given that prior attempts to seek police protection were unsuccessful). Moreover, the court is unpersuaded by Defendant's speculative assertion that Harris would have fired at Defendant or the residence had Defendant remained inside and called the police. Accordingly, the court finds that Defendant has failed to show that he had no reasonable, legal alternative to possessing the firearm.

### 4. *Was there a direct causal relationship?*

Finally, Defendant must establish that he reasonably believed there was a "direct causal relationship . . . between the commission of the criminal act and the avoidance of the threatened harm." *Parker*, 475 F. App'x at 646 (quoting *El-Alamin*, 574 F.3d at 925). Because the court concludes that Defendant has failed to satisfy the first three requirements, the court need not address whether there was a direct causal relationship. *See Lomax*, 87 F.3d at 962 ("Because [the defendant's] proffered evidence was insufficient to establish the first and third elements of the justification defense, [the court] need not determine whether . . . it established the other two elements.").

### 5. *Summary*

The court concludes that Defendant has failed to establish the requisite elements of a justification defense. Accordingly, the court finds that evidence supporting a justification defense would be irrelevant and the court would sustain an appropriate objection at trial. Moreover, in light of the evidence presented, the court finds that a jury instruction on justification would not be warranted. Stated differently, the court would not give a justification instruction were the case to go to trial.

### IV. CONCLUSION

Based on the foregoing, Defendant's "Motion for Pretrial Ruling" (docket no. 15) is **DENIED**.

**IT IS SO ORDERED**.

**DATED** this 15th day of November, 2012.

/s/ Linda R. Reade
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA